IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| George Rone, #24858-018, | ) CIVIL ACTION NO. 9:09-1447-TLW-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| United States of America, | ) |
| Defendant. | ) |

This action has been filed by the Plaintiff, pro se, pursuant to the Federal Tort Claims Act (FTCA) 18 U.S.C. § 1346, et seq. Plaintiff is an inmate at the Federal Correctional Institution (FCI) in Coleman, Florida, although at the time this action was filed he was at the FCI in Bennettsville, South Carolina. Plaintiff had previously been housed at the FCI in Jesup, Georgia, and alleges in this action that the medical staff at FCI Jesup and FCI Bennettsville failed to provide him with adequate medical care.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on August 17, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on August 18, 2009 advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to file an adequate response, the Defendant's motion may be granted, thereby ending his case. Under the terms of the Roseboro Order, Plaintiff was given until September 21, 2009 to file his response. However, Plaintiff did not file a response to the Defendant's motion.

On September 24, 2009 Plaintiff filed a motion (out of time) for an extension of time



to file his response. That motion was granted by the Court by Order filed September 28, 2009, and Plaintiff was given until October 15, 2009 to file any opposition to the Defendant's motion. This second time period has now also expired, with Plaintiff again having failed to file any response in opposition to the Defendant's motion, which is now before the Court for disposition.[1]

### Background and Evidence

Plaintiff alleges in his verified complaint[2] that he suffers from a left inguinal hernia for which he needs surgery, but that the Defendant has refused to schedule surgery for him due to a lack of funds. Plaintiff alleges that although he is experiencing "excruciating pain", he is only being treated for his condition with medications and a hernia belt, instead of with the surgery he needs. Plaintiff alleges that the Defendant's agents were negligent in failing to timely diagnose his hernia, and have been further negligent by their refusal to surgically remove the hernia, and seeks monetary damages. See generally, Verified Complaint with attached Exhibit [Claim letter dated April 15, 2009].

In support of summary judgment, the Defendant has submitted an affidavit from Luis Berrios, a physician and the clinical director responsible for the clinical oversight and healthcare delivered at FCI Bennettsville. Berrios attests that Plaintiff arrived at FCI Bennettsville on May 20,

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, even though Plaintiff failed to file any response to the Defendant's motion for summary judgment, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



2008, where he was seen by medical personnel as part of his intake screening. Plaintiff had a previously diagnosed hernia at that time, for which he was continued on Naprosyn. Plaintiff did not at that time indicate he was having any pain. Plaintiff subsequently reported to health services on May 23, 2008 with a complaint of a hernia, and Berrios attests that an examination revealed no bulging palpated and no strangulation. Although Plaintiff again stated that he was not in pain, he indicated that he was upset about not being referred to see a surgeon regarding his hernia. Medical staff explained to him that surgery was not medically necessary at that time since he was asymptomatic and his hernia was not bulging. Barrios attests that the medical staff also noted that Plaintiff was not wearing the hernia belt previously issued to him, and that he was instructed to wear that belt during his waking hours. Plaintiff was also given Naprosyn and told to return to the health service department if there was any change in his condition.

Berrios attests that Plaintiff did not again report back to health services with complaints regarding his hernia until August 27, 2008, some three months later. Plaintiff indicated at that time that his pain was a "2" on the pain management scale. Plaintiff also stated that when his hernia pops out, he pops it back in. A physical assessment revealed a very small palpable defect with no obvious bulge, and Plaintiff was advised to report to health services when any obvious bulging occurred. Berrios attests that it was explained to Plaintiff that a reducible, non-strangled hernia is generally managed conservatively without surgical repair, that surgery was not warranted given his condition, and that Plaintiff was advised to take over the counter analgesics if needed.

Berrios attest that Plaintiff did not again sign up for sick call requesting something for pain for his hernia until March 20, 2009, approximately seven months later. At that time Plaintiff indicated that his pain was only 2 out of 10, and an examination revealed no obvious left lesion palpated or noted; i.e., the hernia was not popped out at that time. Plaintiff was instructed to take



over the counter medications for any pain and return to medical if his hernia popped out. Plaintiff was also seen by medical for a follow up evaluation on April 9, 2009, at which time he stated his pain was only a "1", and that he was not having any trouble eating or going to the bathroom. An examination on that date revealed swelling on the left pubic area, but did not reveal a bulge through the inguinal ring when Plaintiff coughed. An ultrasound of Plaintiff's left groin was ordered, and he was also given a prescription for Ibuprofen. Plaintiff was instructed to follow up at sick call as needed, or to return immediately if his condition worsened.

Berrios attests that Plaintiff was seen back in sick call on April 15, 2009, at which time he stated that his new medication was not effective for his pain and wanted to be placed on Naproxen. Plaintiff indicated his pain was a "6" at that time, although an examination revealed his inguinal hernia had no obstruction or gangrene. Medical staff gave Plaintiff a prescription for Naproxen, and he was instructed to follow up with sick call as needed. An ultrasound of Plaintiff's left groin area was subsequently taken on May 12, 2009, which revealed a left inguinal hernia which appeared to contain peristalsing bowel loops. Plaintiff voiced no complaints or concerns upon his return to the institution following this ultrasound.

Berrios attests that Plaintiff was seen by medical staff for a follow up evaluation on June 1, 2009, at which time it was noted that Plaintiff was again not wearing his hernia belt. Plaintiff reported his pain as only a "1" on a 10 point scale at that time, and an examination revealed no change in his left inguinal hernia. The results of Plaintiff's ultrasound were reviewed, and a consult was written for Plaintiff to see the general surgeon for evaluation of his left inguinal hernia. On June 12, 2009, Plaintiff was approved to see the general surgeon for a hernia surgical evaluation, and on July 23, 2009, Plaintiff was designated for FCI Coleman (where he is currently housed), where (as



of the date of the affidavit)³ he continues to be monitored for a hernia surgical evaluation by a general surgeon.

Berrios attests that a hernia is a protrusion of an organ or tissue through a weakened area of muscle or tissue, with an inguinal hernia being the most common type. An inguinal hernia occurs when the intestine drops into the internal ring. Berrios attests that hernias are classified as "reducible" or non-reducible", with a reducible hernia (the kind Plaintiff has) being one where the tissue or fat can be pushed back into the abdominal cavity, and a non-reducible hernia being one where the bulge of tissue or fat cannot be pushed back. Berrios attests that a hernia can only be permanently corrected through surgery, but that surgery is not mandatory for reducible hernias, with many patients living for years with such a condition without having them surgically corrected. Berrios attests that the standard treatment for a reducible hernia is to reduce the bulge, which can be accomplished either without external pressure or by firming pushing on the protrusion. See generally, Berrios Affidavit.

In addition to Berrios' affidavit, the Defendant has also submitted a copy of Plaintiff's medical records, reflecting the frequency and nature of the medical care he has received from the Bureau of Prisons. As previously noted, Plaintiff failed to file any response to the Defendant's motion for summary judgment, and has therefore not submitted any exhibits or other evidence in support of his claim or to counter the evidence submitted by the Defendant.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

³Berrios' affidavit is dated July 31, 2009.

5



genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes that the Defendant is entitled to summary judgment in this case.

The FTCA waives sovereign immunity and allows suits against the United States for personal injuries caused by government employees acting within the scope of their employment. Under this Act, a plaintiff may recover monetary awards from the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope...of employment." 28 U.S.C. § 1346(b).[4] Whether any government employee was negligent is to be determined "in accordance with the law of the place where the act or omission occurred," here the State of South Carolina. Id. In order to prove negligence in South Carolina,

---

[4] In order to obtain relief in federal court under the FTCA, a litigant must first have exhausted their administrative remedies. See 28 U.S.C. § 2675; McNeil v. United States, 508 U.S. 106, 113 (1993) ["The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."]. The United States does not contest exhaustion of administrative remedies in this case.



6

Plaintiff must prove by a preponderance of the evidence that 1) the Defendant had a legal duty of care; 2) the Defendant failed to discharge that duty; and 3) Defendant's breach proximately caused him injury. Ajaj v. United States, 479 F.Supp.2d 501, 549 (D.S.C. 2007); Goode v. St. Stephens United Methodist Church, 494 S.E.2d 827, 834 (S.C. 1997); Bailey v. Segars, No. 3370, 2001 WL 791740 (S.C.Ct.App. 2001); Hubbard v. Taylor, 529 S.E.2d 549 (S.C.Ct.App. 2000). Further, Plaintiff is required to show negligence with reasonable certainty, not through mere conjecture, and he may not attempt to prove negligence through the doctrine of res ipsa loquitur. Ajaj, 479 F.Supp.2d at 549; Eickhof v. Beard-Laney, 20 S.E.2d 153, 155 (S.C. 1942); Crider v. Infinger Transportation Co., 148 S.E.2d 732, 734-735 (S.C. 1966).

Here, the Defendant concededly had a legal duty of care, as prison officials have a duty to provide appropriate medical care to prisoners. While this duty can reach the level of a constitutional claim in so far as appropriate medical care for prisoners is mandated by the Eighth Amendment, for purposes of an FTCA claim this duty is provided by statute; see 18 U.S.C. § 4042; which provides that the standard of duty owed is that of "reasonable care". See Johnson v. U. S. Government, 258 F.Supp. 372, 376 (E.D.Va. 1966)[Under Section 4042, a prison official's duty requires only the exercise of ordinary diligence under the circumstance]; see also In re Agent Orange Product Liability Litigation, 635 F.2d 987, 996 (2d Cir. 1980) [dissenting] (citing Owens v. Haas, 601 F.2d 1242 (2d Cir. 1979), cert. denied, 444 U.S. 980 (1979)); Harley v. United States, No. 08-820, 2009 WL 187588 at * 4 (D.S.C. Jan. 26, 2009). After review of the evidence and arguments submitted to this Court in the light most favorable to the Plaintiff, including the allegations of Plaintiff's verified complaint, the undersigned does not find that Plaintiff has presented a sufficient issue of material fact as to whether prison officials fail to exercise "ordinary diligence under the

7



circumstances", and that this case should therefore be dismissed.

First, Plaintiff himself concedes in his verified complaint that he received medical care and treatment for his hernia from prison health services during the time period at issue. This is confirmed not only by the Plaintiff, but by the copy of Plaintiff's medical records which has been submitted by the Defendant, and also by Dr. Berrios, a licensed physician who has provided a detailed history of Plaintiff's medical treatment. In contrast to this evidence of medical care, other than his own conclusory and self serving speculation, Plaintiff has presented no evidence whatsoever to show that the way his hernia was treated during the relevant time period was in any way improper. Specifically, Plaintiff has presented no evidence, such as affidavits from other medical professionals or any other type of medical evidence, to support his claim. Luckett v. United States, No. 08-13775, 2009 WL 1856417 at * 5 (E.D.Mich. June 29, 2009) (citing Lambert v. United States, 198 Fed.Appx. 835, 839 (11th Cir. 2006)[affirming dismissal of medical malpractice claim under FTCA where Plaintiff submitted only "his own conclusory allegations."]; cf. Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; cf. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on Eighth Amendment deliberate indifference claim].

Nothing in the medical evidence provided to this Court supports Plaintiff's negligence claim, and his failure to provide any such evidence, or even to respond to the Defendant's motion for summary judgment, is fatal to his claim. Johnson, 258 F.Supp. at 372 [duty of care only requires



exercise of ordinary diligence under the circumstances]. The evidence presented is not sufficient to create a genuine issue of fact as to whether prison officials failed to exercise "reasonable care" under the circumstances, and the Defendant is therefore entitled to summary judgment in this case. Eickhof, 205 S.E.2d at 156 [a plaintiff is required to show negligence with reasonable certainty, and not through mere conjecture]; see Papasan v. Allain, 478 U.S. 265, 286 (1986) [courts need not assume the truth of legal conclusions couched as factual allegations]; Bender v. Suburban Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["even though pro se litigants are held to less stringent pleading standards then attorneys, the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [plaintiff's conclusory allegations insufficient to maintain claim].

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 22, 2009
Charleston, South Carolina

9



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 2940

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

